UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 14-10369-LTS |
| MICHAEL BROWNE. | ) ) ) | |

ORDER ON MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 138)

July 2, 2020

SOROKIN, J.

Michael Browne, who is presently serving a sentence for a federal firearms offense, seeks an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the combination of his documented health conditions and the present COVID-19 pandemic as extraordinary and compelling reasons justifying his release. Doc. No. 138. The government opposes his request. Doc. No. 143. For the reasons that follow, the Court ALLOWS Browne's motion.

I. BACKGROUND

On May 19, 2017, Browne pleaded guilty to a superseding information charging a violation of 18 U.S.C. § 922(d)(1). Doc. No. 114. Pursuant to Browne's binding plea agreement, the Court accepted the parties' joint recommendation and imposed an eighty-seven-month sentence on September 6, 2017. Doc. Nos. 116, 127. Browne reported to the Bureau of Prisons ("BOP") and began serving his sentence at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix") in Burlington County, New Jersey, on November 3, 2017. Doc. No. 133. His self-surrender date was extended by the Court due to his hospitalization for acute pancreatitis. Doc. No. 132. Browne has served approximately thirty-two months of his

sentence; his release date, according to the BOP, is presently November 2, 2023. Doc. No. 138 at 1 & n.1.

Browne is fifty-two years old, with a documented history of treatment for hypertension, obesity, diabetes, hyperlipidemia, asthma, pancreatitis, and sleep apnea. Doc. No. 138 at 14-15; Doc. No. 138-1. At least several of these conditions put Browne at an elevated risk of suffering serious illness or death, should he contract COVID-19. Doc. No. 138 at 15 (citing medical studies and statements by the CDC and the WHO). On May 17, 2020, Browne wrote to the warden at FCI Fort Dix to request compassionate release, citing his medical history and his inability to practice social distancing while incarcerated. Doc. No. 141-1. That request was denied five days later. Doc. No. 147 at 1; Doc. No. 147-1.

On June 1, 2020, Browne filed a Motion for Compassionate Release in which he asks the Court to reduce his sentence "to time served followed by three years of supervised release with the first six months on home confinement." Id. at 25. His request arises under a provision in 18 U.S.C. § 3582(c) that allows for modification of imposed terms of imprisonment if "extraordinary and compelling reasons warrant such a reduction." Browne supported his motion with BOP medical records, Doc. No. 138-1, and shortly thereafter supplemented his request with additional BOP documents, Doc. No. 141.[1]

The government opposed Browne's motion on June 7, 2020, arguing that Browne failed to exhaust his administrative rights to appeal, as § 3582(c)(1)(A) requires; that such failure renders this Court unable to grant the relief Browne seeks; and that Browne's medical conditions

---

[1] To the extent Browne's supplement was documented as a separate motion, the clerk shall TERMINATE the motion (Doc. No. 141), as the submission does not include a new request, but merely provides additional documents that further support Browne's previously filed motion for compassionate release (Doc. No. 138) that is the subject of this Order.

do not amount to the sort of extraordinary and compelling reason that would warrant a reduction in his sentence. Doc. No. 143. On June 11, 2020, Browne filed a reply brief responding to the government's jurisdictional and merits arguments. Doc. No. 147. Today, Browne filed a second supplemental memorandum supporting his motion. Doc. No. 148. The motion is ripe, and the Court resolves it on the papers.[2]

## II.  DISCUSSION

### A.  Exhaustion and Jurisdiction

Before turning to the merits of Browne's request, both parties addressed this Court's jurisdiction to consider the request in the first instance, in light of the relevant statutory language. The relevant provision of the sentencing statute Browne invokes provides as follows:

> [T]he court, . . . upon motion of the defendant <u>after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf</u> **or** <u>the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility</u>, **whichever is earlier**, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

§ 3582(c)(1)(A)(i) (emphasis added). At the time the motion was filed, Browne had neither "exhausted all administrative rights to appeal" the BOP's failure to make a compassionate release request on his behalf, nor waited thirty days after presenting his parallel request to the warden at FCI Fort Dix.[3] Browne urged the Court to act on his request anyway, arguing at

---

[2] The issues are amply briefed by the parties. Neither party has requested oral argument or sought an evidentiary hearing.

[3] When Browne filed his motion with this Court on June 1st, it seems both parties were aware that he had make a similar request for compassionate release in writing to the warden at FCI Fort Dix, but neither the government nor Browne's counsel knew whether the warden had acted on the request. As it happens, the warden had denied Browne's request ten days before the filing of this motion. Browne's counsel explains why she did not learn of this fact until after she had filed the motion on her client's behalf, citing interruptions in mail between herself and her client resulting from the pandemic and a subsequent lockdown. Doc. No. 138 at 17 n.46; Doc. No. 147

length—and adeptly—that the "exhaust or wait" language in § 3582(c)(1)(A) is subject to equitable exceptions and should be waived here.  Doc. No. 138 at 17-21.  In response, the government contended that the failure to exhaust and the passage of fewer than thirty days stripped this Court of jurisdiction to entertain Browne's motion.  Doc. No. 143 at 6-11.

The Court need not definitively resolve the parties' differing views as to the availability of equitable exceptions or the authority to waive the alternative statutory prerequisites to its consideration of Browne's request.[4]  As of the date of this Order, more than thirty days have passed since the warden of FCI Fort Dix received Browne's letter requesting compassionate release.  The plain language of § 3582(c)(1)(A) creates an "either-or" proposition providing two avenues to this Court's review:  either a sentenced defendant must fully exhaust "all administrative rights to appeal" within the BOP, or thirty days must elapse "from the receipt of" a sentenced defendant's request that the BOP file a compassionate release motion on his behalf "by the warden of the [sentenced] defendant's facility, whichever is earlier."  See Guzman Soto, 2020 WL 1905323, at *4 (finding the government's contention that a denial by the warden of a request under this provision triggers an absolute administrative exhaustion requirement, regardless of the passage of thirty days, "ignores the plain language of the statute").  The government itself has endorsed this view, including in the advice it gives federal inmates on the BOP website.  See Doc. No. 147-2 at 2 (reflecting that the United States took the position, in another federal district court, that a defendant had "alternatively satisfied the statutory"

---

at 1 n.1.  The government does not explain why it could not have obtained, or did not bother to obtain, this information from the BOP before crafting its opposition to Browne's motion.

[4] Two other sessions of this Court have recently resolved the question in the manner urged by Browne.  See United States v. Ramirez, No. 17-cr-10328-WGY, 2020 WL 2404858, at *6-9 (D. Mass. May 12, 2020); United States v. Guzman Soto, No. 18-cr-10086-IT, 2020 WL 1905323, *2-5 (D. Mass. Apr. 17, 2020).

prerequisite to filing a compassionate release motion by filing "after 30 days had passed from his request for relief to the Warden," even where the warden had denied the request); Doc. No. 147 at 3-4 & n.4 (noting additional instances in which the United States has taken the same position, as well as language on the BOP's website conveying the same interpretation).[5]

It is beyond dispute that the second of these options is presently satisfied here—that is, more than thirty days have elapsed since Browne made his request to the warden at FCI Fort Dix. It would makes little sense from a logistical or efficiency standpoint, and it would in no way serve the interests of fairness and justice, to deny without prejudice Browne's present motion because it was filed two weeks too early, only to invite him to refile the same motion now that the requisite time period has passed. Accordingly, the Court finds that it has jurisdiction to consider the merits of Browne's request at this time.

B.  Merits

The question, then, is whether, having "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a)," Browne has identified "extraordinary and compelling reasons" warranting a reduction in his sentence. § 3582(c)(1)(A)(i). The Court's assessment in this regard is guided by the Policy Statement of the Sentencing Commission in § 1B1.13 of the United States Sentencing Guidelines. § 3582(c)(1)(A)(ii). That statement permits a reduction in sentence if "the court determines that" three conditions are met: 1) "extraordinary and compelling reasons warrant the reduction"; 2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and 3) "the reduction is consistent with this

---

[5] These sources are cited in Browne's reply brief, the first submission as to this motion acknowledging the warden's denial of Browne's request. In the more than two weeks that have elapsed since the filing of the reply brief, the government has not sought leave to surreply, nor has it otherwise supplemented its opposition brief in order to address the present posture of Browne's request.

policy statement." U.S.S.G. § 1B1.13(1)(A), (2), (3).  The Application Notes to § 1B1.13 explain that a defendant's medical condition will amount to an extraordinary and compelling reason under § 1B1.13(1) if he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  There is no serious dispute here as to this basic legal framework.[6]

Here, Browne's medical records demonstrate that he suffers from a number of serious conditions, including several that place him at greater health risk should he contract COVID-19. See generally Doc. No. 138-1.  The government says, "[n]either the Court nor the government currently has any information beyond the statements in Defendant's motion that can serve to support his contentions regarding his health or the conditions at FCI Fort Dix."  Doc. No. 143 at 10.  This assertion is simply untrue.  The Presentence Investigation Report ("PSR") prepared for Browne's sentencing confirms that he suffers from high blood pressure (i.e., hypertension) and takes medication to treat it.  The government neither objected to the PSR—which it possesses, see Doc. No. 143 at 13 (citing PSR)—nor sought an opportunity to contest its brief recitation of Browne's medical history.  Looking beyond the PSR, Browne has submitted more than one hundred pages of BOP medical records in support of his motion.  Those records confirm the hypertension noted in the PSR, e.g., Doc. No. 138-1 at 2, and further reflect treatment for

---

[6] The parties do disagree about whether the Court is empowered to consider and find "extraordinary and compelling reasons" beyond those specifically enumerated in the Application Notes to § 1B1.13, with Browne thoughtfully explaining why a number of courts have concluded they have such authority, Doc. No. 138 at 4-7; Doc. No. 147 at 5-6, and the government urging deference to the BOP precludes courts from looking beyond the enumerated reasons, Doc. No. 143 at 12-13.  Because the Court finds that Browne has established one of the enumerated reasons, the Court need not resolve this quarrel.

asthma, obesity, and diabetes, e.g., id. at 4-6, 9-10, 19.[7] The government has offered nothing to dispute the information documented in the BOP medical records. Moreover, the BOP is an arm of the Department of Justice. The government can obtain—and, in other cases, has obtained— information beyond that which is "publicly available," see Doc. No. 143 at 10-11 (reciting information gleaned from BOP websites), regarding COVID-19 conditions at BOP institutions and the medical care provided to federal detainees and inmates.

According to the Centers for Disease Control and Prevention ("CDC"), "[p]eople of any age" suffering from obesity and diabetes "are at increased risk of severe illness from COVID-19," and those with hypertension and asthma "might be at an increased risk for severe illness from COVID-19." CDC, "People of Any Age with Underlying Medical Conditions," http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.htmlEw (last visited June 30, 2020). The day after the government filed its opposition to Browne's motion in this Court, another representative of the United States conceded, in a written submission to the United States Court of Appeals for the Seventh Circuit made on behalf of the government, that a defendant who was

---

[7] In particular, the BOP records reflect an assessment in November 2019 of "Asthma . . . Current," with an albuterol inhaler prescribed as treatment. Doc. No. 138-1 at 5-6. They assess Browne's body mass index ("BMI") as 32.5 in November 2019, id. at 4, down from 41.3 in May 2019, id. at 9. See CDC, "Defining Adult Overweight and Obesity," http://www.cdc.gov/obesity/adult/defining.html (last visited June 30, 2020) (designating as obese any adult with a BMI of 30.0 or above). And, they document a "History of Diabetes" with ongoing counseling for "diabetes mellitus management," Doc. No. 138-1 at 9-10, 19, 36, 67, 78, though they also include blood tests with results below the listed threshold for (but suggesting increased risk of) diabetes, id. at 50, 86; see also id. at 2, 4, 6, 12, 15, 18, 38, 61, 64, 66, 79 (citing "Pre-DM," presumably meaning pre-diabetes). Whether Browne is diabetic or pre-diabetic would not alter the Court's resolution of his motion given his other established medical conditions.

7

diabetic had "presented an 'extraordinary and compelling' reason for his release within the framework of section 3582(c) and the Guidelines," as suffering from a condition identified by the CDC "as a risk factor for contracting a more severe form of COVID-19" satisfies the first enumerated reason in the Application Notes to § 1B1.13. Doc. No. 147-4 at 8-10. The lawyer representing the government in that case also noted the Solicitor General for the United States had, only days earlier, taken the same position on behalf of the government in a submission to the United States Supreme Court. Id. at 9.

Relying on the CDC's guidance and the government's sensible deference to it in this very context (albeit in other cases),[8] this Court finds that Browne has established an extraordinary and compelling reason for a reduction in his sentence based on evidence that he suffers from multiple medical conditions which put him at heightened risk of contracting a more severe form of COVID-19, and the nearly indisputable fact that those living in congregate settings (such as prisons) are at an increased risk of contracting highly contagious disease- (such as COVID-19). Thus, the Court proceeds to weigh the § 3553(a) factors and consider whether Browne is a danger to the safety of any other person or to the community.

As to the important public-safety factor, counsel for the government declares that "it is difficult to imagine how the defense counsel can argue that Defendant is not a threat to society." Doc. No. 143 at 14. But, of course, facts, rather than imagination, are the stuff of judicial decision.[9] In summarily addressing such facts, the government says Browne has an "adult

---

[8] Here, the government suggests Browne would need to show that he has actually contracted COVID-19 or has been in close contact with someone known to have it in order to establish an extraordinary and compelling medical reason for his release. Doc. No. 143 at 12. The Court disagrees.

[9] And, the government need not "imagine" how Browne's lawyer could make such an argument. It need only read her well-crafted papers to understand the basis upon which she does make such an argument. Doc. No. 138 at 22-25.

criminal record [that] begins in 1987, when he was 19-years-old, and continues to the present." Id. at 13. Of course, if that were a fair characterization of the facts, it would support a powerful argument for denying Browne's motion. The statement, however, is not true. There is no doubt that Browne has a lengthy criminal record. But, contrary to the government's unsubstantiated claim it "continues to the present," there is no evidence whatsoever of Browne committing any crime since 2010 other than driving without a valid license.[10]

On October 4, 2010, Browne sold a firearm to a government informant. This conduct resulted in his indictment by a federal grand jury on December 8, 2014 for being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1), a charge which exposed Browne to a mandatory fifteen-year sentence.[11] Doc. No. 1. Browne was arrested on that charge on August 5, 2015. Doc. Nos. 10, 13. The firearm sale was not Browne's only criminal conduct in 2010; on December 30, 2010, he was arraigned in Suffolk Superior Court on multiple drug distribution charges. Nothing before the Court suggests Browne has committed any crimes, but for a few driving offenses, since December 2010.

And, for nearly six of the seven years between December 2010 and the start of his federal sentence in November 2017, Browne lived in the community. According to the PSR, Browne posted bail on the state drug charges on July 15, 2011, remained in the community until his conviction and sentence on those charges on August 15, 2012, then was released based on a post-conviction motion on October 25, 2012. Upon his release, he resided in the community until his

---

[10] This, and following recitation of facts, is derived from the portions of Browne's PSR recounting his federal offense and his criminal history, none of which has ever been disputed by the government.

[11] Pursuant to Browne's plea agreement, the government filed a Superseding Information on May 19, 2017, charging Sale of a Firearm and Ammunition to a Felon in violation of 18 U.S.C. § 922(d)(1), a charge which did not carry with it a mandatory minimum sentence. Doc. No. 113. That is the charge to which Browne ultimately pled guilty.

August 5, 2015 arrest on the federal charge. Doc. Nos. 10, 13. He was detained until November 17, 2015, when he was released on conditions. Doc. Nos. 33, 34. Browne then resumed living in the community for nearly two more years, until his self-surrender at FCI Fort Dix. In other words, except for 259 days (less than nine months) in state custody on the 2010 drug charges and three-and-a-half months in federal pretrial custody, Browne lived in the community from December 2010 until November 2017 without accruing any new non-traffic-related criminal charges.

In fact, Browne's arrests, which were plentiful when he was a young man, virtually disappeared after December 2010. In the decade since then, he has been arrested and charged four times: once, in 2015, for the instant federal offense (which he had committed nearly five years earlier); and three times, in 2011, 2014, and 2015, for operating a motor vehicle with a suspended license. One of the traffic offenses was dismissed; another resulted in a no-contest plea; and the oldest of the three, which was accompanied by a drug possession charge that was ultimately dismissed, yielded a guilty plea and a ten-day sentence Browne served concurrently with his state drug sentence in 2012.[12]

In short, Browne's conduct over his years in the community since December 2010 generally conformed to the requirements of the law. This period was not marked by violent criminal conduct or threats to public safety. It is true that Browne came to the Court for sentencing with a lengthy criminal record dating back to his youth, including adult convictions for larceny (multiple), shoplifting, and drug distribution (at ages 18, 26, 28, 35 and 42). His is objectively a serious and concerning criminal record. It has not, however, "continue[d] to the

---

[12] On June 30, 2017 Browne was also arrested for an alleged violation of pretrial release conditions. He was released that same day on previously imposed conditions and ordered to appear for a drug test and attend a session of the Court's CARE program. Doc. No. 124.

present." Notably and significantly, it all but ceased in December 2010. Browne's conduct over the years since then, including substantial time living in the community before his federal sentence, strongly supports his motion for release. And, of course, since November 3, 2017, Browne has been an inmate in a low-security federal prison. See BOP, "FCI Fort Dix," http://www.bop.gov/locations/institutions/ftd/ (last visited June 30, 2020). In its opposition to Browne's motion, the government did not suggest, let alone demonstrate, that Browne has committed any misconduct in federal prison. Nonetheless, the Court directed Probation to inquire of the BOP, which reported Browne has had a single violation of rules, and it was not violent.

In addition, Browne is an alcoholic and drug addict who made substantial progress in controlling his disease while on federal pretrial release, and who has continued to work on his recovery while serving his sentence. Doc. No. 141-3. He has also pursued vocational training, demonstrating an interest in enhancing the tools that will be at his disposal to maintain a law-abiding life when he returns to the community. Doc. No. 141-2. He has formulated a release plan, including returning to live with his long-time girlfriend, near his son, daughter-in-law, and granddaughter, and resuming work as a union iron worker (a trade he has continued to study while at FCI Fort Dix). Doc. No. 147-1 at 4-5; see Doc. No. 141-2 at 3 (reflecting completion of a course on welding). Probation has recently approved the residence Brown identifies in his release plan. Doc. No. 148 at 5.

Under the totality of circumstances on the record before the Court, having carefully considered the factors identified in 18 U.S.C. § 3553, the safety of the public, and the other conditions listed in § 1B1.13 of the Sentencing Guidelines, the Court finds that a reduction in

Browne's sentence is both warranted and consistent with the Sentencing Commission's Policy Statement.

III.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1) Browne's motion for compassionate release (Doc. No. 138) is ALLOWED;

2) Browne's sentence on Count One of the Superseding Information charging a violation of 18 U.S.C. § 922(d)(1) is REDUCED to time served followed by three years of supervised release;

3) Browne shall serve the first six (6) months of his supervised release on home confinement;

4) Browne shall live at the location described in the release plan he submitted with his request to the warden and thereafter approved by Probation (Doc. No. 147-1 at 4-5; Doc. No. 148 at 5);

5) All other terms and conditions previously imposed on Browne's supervised release and memorialized in this Court's September 6, 2017 Judgment (Doc. No. 127) remain in effect except for Additional Supervised Release Terms 3 (which required a six-month period in a Residential Re-Entry Center, a term now replaced by the six months of home confinement ordered above), and 6 through 9 (all of which specifically addressed Browne's conduct between his sentencing and the time of his self-surrender);

6) Browne shall observe at least three sessions of the Court Assisted Recovery Effort ("CARE") by the end of August 2020; and

7) Browne shall appear for a status hearing before this Court on Wednesday, July 8, 2020 at 4:00 PM via Zoom, and he shall appear at such further status conferences as directed by the Court or Probation.  Browne will be excused from regular status conferences before the undersigned for any period during which he is enrolled in the CARE program.

            SO ORDERED.

            /s/ Leo T. Sorokin
            United States District Judge